IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GARY D. TAYLOR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-CV-835-O |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Gary D. Taylor, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On June 18, 2010, in the 371st District Court of Tarrant County, Texas, a jury found Petitioner guilty of attempted arson and stalking and assessed his punishment at twenty-five years' confinement, the minimum sentence, for each offense. Adm. R., Js. of Conviction 73-76, ECF No. 16-8. The Second District Court of Appeals of Texas summarized the factual background of the case as follows:

> The complainant, Gala Tenay Abdul-Aleem, testified at trial that she and Taylor met in the fall of 2008 at a gas station in Fort Worth. Soon thereafter, they became romantically involved. There came a time when she no longer wanted to remain in what she described as a stormy relationship with Taylor. Partially because of this, she moved to a different apartment without telling him. However, he found

out where she lived. They were civil but did not reunite. During this time, she did not have a car and relied on Taylor for transportation. She bought a car in July 2009. Aleem described in her testimony how Taylor began stalking her soon thereafter and damaged her car, during a period starting in July 2009 and ending the following month.

The first incident occurred on a July evening. Aleem witnessed, from her bedroom window, Taylor pouring a liquid into her car's gas tank. Aleem testified that Taylor told her that "he really wasn't for sure what he poured in there, but it was a combination of things that he had in his trunk, transmission fluid, oil, [and] sugar." Aleem believed Taylor's motivation in disabling her car was to keep her dependent on him for transportation. She was forced to hire someone to "drop" the car's gas tank and make the car safe to drive again.

On August 23, 2009, she saw, through her bedroom window, Taylor cutting one of her car's tires. She then called the police and pressed charges. This began a three-day period of "torture" (in her words), in which Taylor made repeated "[p]hone calls, visits, bangs on [her] bedroom window, [and] front door."

On August 26, 2009, Aleem saw Taylor deliberately ram his vehicle into hers, damaging her vehicle's rear bumper in the process. Aleem ran out of her apartment when she saw Taylor do this, but she quickly ran back to her apartment when Taylor left his car and began chasing her. She made it inside her apartment but was unable to lock the door before Taylor charged at her, knocked her down, and began choking her. She begged him to stop, but his grip only became stronger. Fortunately, a neighbor walked over to her apartment, and Taylor released his grip on Aleem's throat. Aleem testified that as Taylor walked away, he told her, "Bitch, that's all you worry about is your car."

Later on August 26, Taylor went to Aleem's apartment complex again. She testified that he told her that because "[she] cared about [her] car so much that he was going to go get gas and really put it on fire." Taylor returned to her apartment complex later that day and used his car to block her car in the carport where it was parked. A neighbor, who had parked her car near Aleem's car, asked Taylor whether she could move her car in order to avoid her car catching on fire. Taylor agreed and backed up his car just far enough to allow the neighbor to move her car. At that point, Taylor took a gas can from his car and poured liquid onto the roof of Aleem's car. She begged him to stop, but he refused. The liquid he poured emitted a very strong smell that Aleem recognized as gasoline. She described the amount of gasoline as such a large amount that it dripped down the car and onto the pavement. After Taylor poured gasoline onto Aleem's car, he walked to his own car, retrieved a light blue washcloth, lit the washcloth with a cigarette lighter, and threw the washcloth onto the roof of Aleem's gas-soaked car.

2

Aleem's neighbor, Travis Knowles, testified that he heard Aleem screaming, "Don't light my car on fire." He then ran inside his apartment, grabbed a baseball bat, ran towards Taylor, and told him not to light Aleem's car on fire. This distracted Taylor long enough to give Aleem an opportunity to remove the smoking washcloth from the top of her car. Knowles testified that gas was "everywhere" and characterized Aleem's car as "soaking wet" from the gasoline. Knowles further testified that he had Occupational Safety and Health Administration (OSHA) training in his work and that because he had smelled gasoline everywhere and because Aleem's car was parked under an awning with people around, a resulting fire could have caused death or serious bodily injury to someone.

After exchanging words with Knowles, Taylor left the apartment complex in his own vehicle. Aleem and Knowles both called 911 and reported the attempted arson to the police. The 911 recordings were played for the jury. Officer Ross Lyons of the Fort Worth Police Department testified that when he arrived at the scene, he smelled a strong odor of gasoline coming from Aleem's car. He also observed that Aleem's car and the ground around it were "wet." Officer Seth Spawn, also of the Fort Worth Police Department, testified that he photographed Aleem's car and the surrounding area. He also confirmed the odor of gasoline. He had no doubt that Aleem's car was soaked in gasoline.

Aleem's nine-year-old neighbor, J.G., testified that she saw Taylor parked in the apartment complex parking lot. She watched him pour gasoline from the can onto Aleem's car. She also saw him take a towel or rag out of his car and light it with a cigarette lighter.

There was also evidence that Taylor later admitted to a Fort Worth police detective and a Fort Worth fire investigator that he had led Aleem to believe that he intended to burn her car. He further admitted that he poured liquid from his gas can onto her car and then lit a towel or rag with a cigarette lighter. He first said the liquid was gasoline, then water, and that he poured it on the car to scare her; he later said there might have been a small amount of gasoline in the can before he added the water.

The defense called Lieutenant Steve Larison of the Fort Worth Fire Department to testify. He testified to his opinion that, based on his review of the photographs taken by the police department, the liquid in question "looked like water." He based this opinion on "life experience." He admitted that the photographs were "certainly beyond [his] expertise on identifying what the liquid is ." And on cross-examination, he disavowed any "particular training evaluating or examining photos, liquids in photos." He also testified about the scientific aspects of fuel ignition, flammability, and dew points.

3

> Robert Arganbright testified as an expert for the defense over the State's objection. He has bachelor's and master's degrees in physics, is an accident reconstruction expert, and teaches in a community college. He had reviewed the photographs, taken by police at the scene, of the liquid on the top of Aleem's car. He also had photographed an experiment that he had performed using water and gasoline. It was his opinion that water tended to "bead" and that gasoline did not. He concluded that the liquid shown in the police photographs was water, not gasoline, due to the fact that, in his opinion, it appeared to bead.
>
> The State called Stuart Brozgold, a former City of Arlington arson investigator, to evaluate the evidence and the theory of the case presented by the defense. In his opinion, the evidence showed a complete arson. He determined that the facts that the temperature at the time of the incident was around 98 degrees Fahrenheit, the wind was blowing 8-10 mph, the automobile was under a canopy, and gasoline vapors, which are heavier than air, tend to settle downward were all possible reasons why the gasoline on the car did not ignite.

Mem. Op. 2-6, ECF No. 15-4.

The appellate court affirmed the trial's court judgments, and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. *Id.* at 19; Resp't's Ans 3, ECF No. 13. Petitioner also filed a state habeas application challenging his convictions, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. Appl. for Writ of Habeas Corpus, cover, ECF No. 16-8. This petition for federal habeas relief followed.

## II. ISSUES

Generally, Petitioner raises two grounds for habeas relief, wherein he claims he received ineffective assistance of trial counsel and insufficiency of the evidence. Pet. 7, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither barred by the statute of limitations nor successive. Resp't's Ans. 8, ECF No. 18.

## IV.  DISCUSSION

### A.  Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254.  Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011).  This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings."  *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings.  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  A petitioner has the burden of rebutting the presumption of correctness by clear-and-convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written order, as in this case, it is an adjudication on the merits, which is also entitled to the presumption of correctness.  *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there

is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

**B. Ineffective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. Const. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* the way that a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

> deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

362 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of petitioner's ineffective assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

At trial, Petitioner was represented by Roy Keith McKay. In his state habeas application Petitioner alleged that counsel was ineffective because he (a) failed to make a *Batson* objection which led to him being tried by an all white jury, (b) had never tried an arson case to a jury or familiarized himself with the National Fire Protection Association Manual Series Number 921, and (c) failed to object to the jury charge at the punishment phase for combining four separate incidents, and that (d) the state failed to prove beyond a reasonable doubt that the liquid he poured on the vehicle was combustible or flammable. Appl. for Writ of Habeas Corpus 7-10, ECF No. 16-8.[2]

Counsel McKay responded to Petitioner's allegations as follows:

> Ground One: During jury selection, a number of challenges for cause were made by both the defense and prosecution but I do not recall any peremptory challenges being made by the State that struck any veniremen that were African-American. It is my standard practice to take notice of the State's use of peremptory challenges that exclude veniremen who are of the same race or ethnicity as the defendant and determine if a 'Batson' motion is warranted, but that issue did not

---

[2]To the extent Petitioner raises new factual and/or legal arguments for the first time in this federal proceeding, the claims are unexhausted and procedurally barred from this Court's review. Pet'r's Supp./Br. in Support 3-7, ECF No. 9; Resp't's Ans 8-10, ECF No. 13. 28 U.S.C. § 2254(b). Under the Texas abuse-of-the-writ doctrine, Petitioner cannot now return to state court for purposes of exhausting the claims. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (West Supp. 2013). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, any such grounds raised for the first time in this federal petition, are procedurally barred from this court's review. *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000).

arise during this jury selection.

Ground Two: Prior to being appointed to represent Mr. Taylor, he voluntarily met with a police detective and provided a statement wherein he asserted his defense that the liquid poured on Ms. Aleem's vehicle was water and not gasoline. Given this as the foundation of his defense, I secured two expert witnesses to testify that the liquid which appeared in photographs of the crime scene had the characteristic properties of water and not gasoline. Since no arson actually resulted from Mr. Taylor's actions, I saw no need to provide evidence relating to the National Fire Protection Association Manual Series Number 921. The defensive theory in this case was based on the common knowledge that water is not a combustible liquid.

Ground Three: This ground initially asserts ineffective assistance of counsel but actually asserts a sufficiency of evidence argument.

Ground Four: This ground asserts a sufficiency of evidence argument.

Appl. for Writ of Habeas Corpus 58-59, ECF No. 16-8.

As to Petitioner's first claim, based on the state court record and counsel's affidavit, the state habeas judge found that there was no evidence that a *Batson* motion was warranted. *Id.* at 61. The court, citing *Batson,* set forth the appropriate standard in determining whether a prima facie showing was established and concluded that Petitioner had failed to show the state removed any panel members of Petitioner's race or used its peremptory challenges to exclude members based on their race alone. *Id.* at 64. Hence, applying the *Strickland* standard, the court concluded that Petitioner had failed to prove that counsel should have made a *Batson* challenge. *Id.* The Texas Court of Criminal Appeals denied relief based on the habeas court's findings. The state courts' adjudication of the claim is not contrary to or involve an unreasonable application of *Strickland.* Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000).

As to Petitioner's second claim, the state appellate court, applying the *Strickland* standard,

addressed the matter as follows:

> Taylor contends that his trial counsel was ineffective because he was unprepared to try an arson case and because he hired an expert of "dubious background and qualifications" to testify.
>
> Taylor filed a motion for new trial and requested a hearing thereon, which the trial court granted. During the hearing, Taylor called his trial counsel, Keith McKay, to testify. McKay testified that he had been a practicing attorney since 1985. McKay testified that in preparation for the trial, he read the State's file and reviewed the State's evidence against Taylor. He also read all of the witness statements and hired a private investigator to investigate the case. Further, McKay reviewed the statutes dealing with arson and stalking and compared the indictment to the requirements of the statutes. Additionally, McKay hired an expert to bolster the arson defense theory that Taylor put forth before McKay was hired to defend him.
>
> As support for his claim that McKay was unprepared to try his case, Taylor points to the fact that McKay's first motion for continuance was not verified. However, McKay's mistake was a simple clerical error, and he filed a corrected motion a few days later, which was granted by the trial court. The minor clerical error contained in the first motion for continuance had no bearing on the result of Taylor's trial.
>
> As further evidence of McKay's alleged incompetence, Taylor points to the fact that McKay introduced evidence that Aleem visited Taylor in jail after the arson and stalking incidents. However, as McKay stated during his testimony, that decision was based on trial strategy. McKay testified:
>
>> I think it was a tradeoff. She testified as to what a nightmare it was and how she essentially had been tortured by [Taylor], but, yet, she would go see him at jail–in the jail, and there was some testimony of some other times that she saw him when he was out on bond. So I think that was a fair tradeoff. You don't want the jury to know your client's in jail, but with her testimony, I felt it was good for the jury to know she was going to see him. How could she be so terrified if she would go talk to him in and out of jail?
>
> McKay explained that his trial strategy was to make Aleem appear to lack credibility.
>
> As further support for his argument that McKay was unprepared for trial, Taylor points out that McKay was not familiar with the National Fire Protection Association Manual Series Number 921 (the NFPA 921). However, during the defense's case in chief, McKay called an expert witness, Lieutenant Larrison, who

9

was quite familiar with the NFPA 921 manual and who testified about the manual's role in the practice of arson investigation.

Taylor asserts that the second expert McKay called on his behalf, Arganbright, the physics professor, jeopardized Taylor's defense because Arganbright was not qualified to testify as an expert in an attempted arson trial.

McKay testified that before he began representing Taylor, Taylor had given interviews to both a Fort Worth police detective and a Fort Worth fire department investigator. In both of those interviews, Taylor admitted pouring a liquid onto Aleem's car and lighting a blue towel or rag on fire. However, in both interviews, Taylor essentially maintained that the liquid he poured onto Aleem's car was water, not gasoline. Therefore, McKay's defense theory was limited to asserting that the liquid poured onto the vehicle was actually water and not gasoline. He had called Arganbright for the limited purpose of reviewing photographs taken at the scene and establishing that the liquid on Aleem's car exhibited the properties of water rather than gasoline. The record supports that Arganbright examined the photographs taken by police and opined that the liquid in question was water, not gasoline.

Taylor points to Arganbright's lack of expertise in the area of arson investigation as evidence of McKay's ineffectiveness. However, as pointed out above, the issue in this case was whether the liquid poured onto Aleem's car was gasoline or water. The issue in this case was not where and how a particular fire started. Those are determinations that an arson investigator would make. Arganbright, a physics professor with both a master's degree and bachelor's degree in physics, was qualified to testify to the visual characteristics of water contrasted with those of gasoline.

It appears that McKay pursued other experts to testify and support Taylor's statements to the Fort Worth detective and fire investigator that the liquid he poured onto Aleem's car was water, not gasoline. McKay contacted Max Courtney's office, the Integrated Forensic Labs, and certified arson investigator Kelly Johnson in regard to testifying to the characteristics of water and gasoline. However, none of the other three experts that McKay contacted, in his view, could assist the defense in establishing that the liquid Taylor poured onto Aleem's car was water and not gasoline.

The trial record and the record from the hearing on Taylor's motion for new trial reflect that McKay's actions were motivated by trial strategy to show that Aleem was not a credible witness and that the liquid poured onto Aleem's car was water and thus not a flammable or combustible substance. It appears that McKay diligently prepared for trial and called not only one but two expert witnesses to support the defensive theories. McKay's performance during the trial was more than sufficient,

10

>and this is demonstrated by the fact that the jury deliberated during the guilt-innocence phase for approximately nine hours before deciding Taylor's guilt. The record in this case does not demonstrate that McKay rendered ineffective assistance.
>
>Further, Taylor does not show that, had McKay prepared for trial differently or had McKay obtained a different expert to testify, Taylor would have been found not guilty. Taylor cannot show by a preponderance of the evidence that McKay's representation fell below prevailing professional norms and that there is a reasonable probability that, but for McKay's deficiency, the result of the trial would have been different.
>
>We determine that Taylor did not meet his burden of proving his claim of ineffective assistance of trial counsel . . . .

Mem. Op. 15-18, ECF No. 15-4.

The state courts' adjudication of the claim is not contrary to or involve an unreasonable application of *Strickland.* Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690-91; *St. Aubin v. Quarterman,* 470 F.3d 1096, 1102 (5th Cir. 2006), *cert. denied,* 550 U.S. 921 (2007).

Finally, under Petitioner's third claim, he asserts counsel was ineffective by failing to object to the jury charge at the punishment phase for combining "four separate incidents." Pet. 7, ECF No. 7. Petitioner's argument under this claim is vague and incomprehensible, nevertheless the state habeas court entered the following findings on the issue:

>14. Applicant was tried and convicted, for both attempted arson and stalking in the same trial.
>15. Applicant does not allege that he was improperly tried on multiple counts.
>16. Applicant pled true to the habitual offender notice.
>17. The jury was ordered to assess punishment on the two convictions separately.
>18. The jury assessed punishment at twenty-five years, separately, for each count.
>19. The jury assessed punishment at the minimum punishment possible.
>20. Applicant presents no evidence that he was harmed by the punishment jury charge.

Appl. for Writ of Habeas Corpus 62, ECF No. 16-8 (citations to the record omitted).

Based on its findings, the state court concluded that Petitioner failed to prove the jury charge improperly charged the jury to assess punishment on both counts and that, because he received the minimum punishment possible, Petitioner failed to demonstrate the jury was affected by being ordered to assess punishment on both counts in the same jury charge. *Id.* at 65. Accordingly, at the very least, Petitioner failed to satisfy the second prong of *Strickland* by showing a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the charge. *Id.* 65. The Texas Court of Criminal Appeals denied relief based on the habeas court's findings. The state courts' adjudication of the claim is not contrary to or involve an unreasonable application of *Strickland.* Where error in a state court's jury charge does not have any substantial and injurious effect or influence on the jury, a petitioner cannot show any prejudice attendant to his counsel's conduct in failing to object to the charge, as required for ineffective assistance of counsel. *Galvan v. Cockrell,* 293 F.3df 760, 766 (5th Cir. 2002).

**C. Sufficiency of the Evidence**

Under his second ground, Petitioner claims the evidence was insufficient to support his attempted-arson conviction. Pet. 7 & Mem. of Law 21-25, ECF No. 1. In reviewing the sufficiency of the evidence in the context of habeas corpus proceedings challenging the judgment of a state court, a federal court's review is limited to determining whether, based upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). The court's review of the evidence is conducted in the light most favorable to the verdict. *Selvage v. Lynaugh,* 823 F.2d 845, 847 (5th Cir. 1987).

Applying the *Jackson* standard, the Second Court of Appeals addressed the claim as follows:

In count two of the indictment, the State charged Taylor with the following:

12

> [Taylor] did then and there intentionally, with the specific intent to commit the offense of arson, do an act, to-wit: while in an incorporated city, pour a combustible or flammable liquid on a motor vehicle and ignite an ignition source, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

This language tracked the language of Texas Penal Code section 28.02 for arson and section 15.01 for criminal attempt. "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."

We note first that Taylor's argument appears to be an "impossibility" defense. He argues that the liquid on top of Aleem's car could not and did not ignite because of the conditions existing at the time or that there was no ignition source if it was grabbed out of his hand. However, Taylor cites no case law in support of his argument.

The impossibility defense, and when it is available, was explained in *Chen v. State*. In *Chen,* the defendant was convicted of attempted sexual performance of a child. The evidence showed that he had arranged on the internet to meet with a willing thirteen-year-old girl for sexual purposes. As it turned out, the thirteen-year-old girl was in fact a police officer who led Chen to believe that he would meet such a girl. Chen was arrested at the agreed rendezvous location. At trial and on appeal, Chen argued that it was physically impossible for him to have committed the offense that he was charged with attempting.

The court surveyed the law on the impossibility defense and its applicability in criminal attempts. The court explained that "factual impossibility exists [in criminal attempt] when due to a physical or factual condition unknown to the actor, the attempted crime could not be completed"; it "refers to a situation in which the *actor's objective was forbidden by the criminal law,* although the actor was prevented from reaching that objective due to circumstances unknown to him." The court explained that "[l]egal impossibility [only] exists [when] the act[,] if completed[,] *would not* be a crime, although what the actor [might] intend[ ] to accomplish would be a crime." The court held that factual impossibility was not a defense to the attempted criminal act in that case, and the judgment of the trial court was affirmed.

In the present case, the intended act was arson, a criminal act. Thus, the intervening circumstances–the weather, the wind, the nature of gasoline, and the complainant grabbing the lit rag–could not be considered as a defense to the attempted arson in this case. The attempted arson was completed when Taylor lit the

13

rag after pouring the gasoline onto the car. It mattered not whether he threw the rag on the car.

We have reviewed the evidence adduced at trial in the light most favorable to the verdict, and we conclude that a rational jury could have found beyond a reasonable doubt that Taylor poured a flammable liquid onto the roof of Aleem's car and lit an ignition source with the intention to burn her car.

A review of the record reflects that Taylor told Aleem that he intended to light her car on fire; Aleem saw him pour liquid from a gas can onto her car; Aleem smelled the odor of gasoline coming from the liquid on her car; Taylor lit a washcloth with a cigarette lighter and tossed it onto the roof of Aleem's car; Knowles saw and smelled gas on Aleem's car; Knowles saw Taylor light a washcloth with a cigarette lighter; the police officers who were dispatched to the scene determined that the liquid on and around Aleem's car was gasoline; J.G. saw Taylor pour liquid from a gas can onto Aleem's car; J.G. also saw Taylor ignite a washcloth with his cigarette lighter; Arganbright, a physicist, testified that gasoline is a flammable liquid, and Brozgold, a private fire investigator, testified that a cigarette lighter is an ignition source; Taylor admitted to a detective that he poured some gasoline onto Aleem's car, although he almost immediately said that he poured water, he later admitted that the can could have contained a small amount of gasoline before he filled it with water; and he admitted to a fire investigator that he poured the liquid that was in the gas can onto Aleem's car.

We hold that this evidence is sufficient, under the standard of review set forth above, to sustain Taylor's conviction for attempted arson.

Mem. Op. 8-11, ECF No. 15-4 (citations omitted).

The state court's adjudication of the claim is not contrary to or involve an unreasonable application of *Jackson*. Neither the state appellate court nor this federal habeas court may weigh the credibility of the witnesses or reassess the weight of the competing lines of evidence presented to the jury. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith,* — U.S. —, 132 S. Ct. 2, 4 (2011). Viewed in the light most favorable to the prosecution, the Court agrees that there was sufficient evidence to permit a reasonable jury to find Petitioner guilty of attempted arson.

14

## V.  CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 1st day of April, 2015.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**